FILED
2026 Sep-30 PM 12:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| COURTNEY CRAYNE,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:22-cv-01537-SGC |

**MEMORANDUM OPINION**[1]

This matter is before the court on (1) plaintiff Courtney Crayne's motion to award prejudgment interest and (2) motions pursuant to Federal Rules of Civil Procedure 50(b), 59, and 60(a) filed by defendants the Board of Trustees of The University of Alabama, for its division The University of Alabama at Birmingham, and The University of Alabama Health Services Foundation, P.C. (collectively, "UAB" or "Defendants"). (Docs. 67, 69).[2] For the reasons explained below, Defendants' posttrial motions will be denied, and Dr. Crayne's motion to award prejudgment interest will be granted.

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I. Background

Following a four-day trial, a jury returned a verdict finding (1) Dr. Crayne's gender and status as a mother was a motivating factor that prompted UAB not to renew her contract, (2) UAB would have decided not to renew Dr. Crayne's contract even if it had not taken her gender and status as a mother into account, and (3) UAB retaliated against Dr. Crayne for engaging in protected activity. (Doc. 61). The jury awarded Dr. Crayne damages in the amount of $192,000 for back pay and benefits and $75,000 for mental anguish. (*Id.*). On November 6, 2025, the court entered a final judgment based on the verdict. (Doc. 64).

The following day, Dr. Crayne moved to amend the judgment to include prejudgment interest in the amount of $198,310.77. (Doc. 65). On November 19, 2025, the court denied that motion without prejudice, set a deadline for Dr. Crayne to refile the motion, and withdrew the final judgment pending resolution of Dr. Crayne's request for prejudgment interest.[3] (Doc. 66). Dr. Crayne timely refiled her motion, to which Defendants objected. (Docs. 67, 68).

---

[3] The court withdrew the final judgment contemplating it would be amended to include an award of prejudgment interest. The court also mistakenly entered judgment in favor of Defendants on Dr. Crayne's claim for discrimination. Per the Eleventh Circuit's pattern jury instructions, a defendant's success on a "same decision" defense means "the jury should award no compensatory or punitive damages, even though Plaintiff has proven that "race, color, religion, sex or national origin was a motivating factor." *See* also 42 U.S.C. § 2000e-5(g)(2) (B) (providing that if an employer prevails on the "same-decision" defense, the court may grant declaratory relief, limited injunctive relief and limited attorney's fees and costs; this is an issue for the court, not the jury). Thus, the court will enter judgment in favor of Dr. Crayne on this claim.

On December 4, 2025, Defendants filed posttrial motions under Rules 50(b), 59, and 60(a) seeking judgment as a matter of law, amendment and/or correction of the judgment, a new trial on Dr. Crayne's retaliation claim, and/or remittitur of the verdict. (Doc. 69). Dr. Crayne objected, and Defendants have replied. (Docs. 70, 77). Accordingly, all matters are now ripe for review.

## II. Defendants' Rule 50(b) Motion

Defendants renew their motion for judgment as a matter of law because they contend there was insufficient evidence (1) for the jury to find they retaliated against Dr. Crayne; (2) for the jury to find they discriminated against Dr. Crayne; and (3) to support the jury's award of damages. (Doc. 69). In response, Dr. Crayne argues Defendants waived their right to pursue a Rule 50(b) motion because they did not make a Rule 50(a) motion following the close of the evidence. (Doc. 70). She also asserts both that Defendants ask this court to draw inferences in favor of Defendants, rather than Dr. Crayne, and that she presented sufficient evidence to support the jury's verdict.

### A. Standard of Review

"District courts seldom enter a judgment as a matter of law, for it is appropriate only when there can be but one reasonable conclusion as to the verdict." *Thomas v. Broward Cnty. Sheriff's Off.*, 71 F.4th 1305, 1312 (11th Cir. 2023) (internal quotations and citations omitted; alterations adopted). "Likewise, district

courts seldom grant new trials based on the weight of the evidence because doing so is appropriate only where the verdict is contrary to the great, and not merely the greater, weight of the evidence." *Id.* (internal quotations and citations omitted; alterations adopted).

In considering a Rule 50 motion, the court draws all reasonable inferences in favor of the non-moving party, may not weigh the evidence or make any credibility determinations, and disregards any "evidence that the jury need not have believed." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.") (quotation and citation omitted). The court considers only whether the verdict is supported by sufficient evidence. *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007); *see also Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) ("Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate only if the facts and inferences point [so] overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict.") (citations and quotations omitted). The court may not second guess the jury or substitute its judgment for the jury's judgment, so long as its verdict is supported by sufficient

evidence. *See Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 811 (11th Cir. 2020). Further, a Rule 50(b) motion is a renewal of a Rule 50(a) motion made during trial. Thus, "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of evidence and prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004).

**B. Discussion**

To begin, Dr. Crayne's arguments about Defendants' failure to make a Rule 50(a) motion at the close of all evidence are based on a case interpreting an outdated version of Rule 50(a). As noted in the committee comments to the 2006 amendments,

> Rule 50(b) is amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence. Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion. . . .
>
> This change responds to many decisions that have begun to move away from requiring a motion for judgment as a matter of law at the literal close of all the evidence. Although the requirement has been clearly established for several decades, lawyers continue to overlook it. The courts are slowly working away from the formal requirement. The amendment establishes the functional approach that courts have been unable to reach under the present rule and makes practice more consistent and predictable.

Fed. R. Civ. P. 50 advisory committee's notes to 2006 amendment. Therefore, Defendants, who made a motion for judgment as a matter of law at the close of Dr. Crayne's case,[4] did not waive their right to bring a Rule 50(b) motion.

**1. Evidence of Retaliatory Intent**

Defendants argue the court should supplant the jury's retaliation verdict because (1) the timing of events negates any retaliatory motive; (2) Drs. Cron and Cohen possessed a good faith basis for their decision not to renew Dr. Crayne's contract; and (3) Dr. Crayne did not present evidence of retaliatory animus. In response, Dr. Crayne asserts that Defendants ask this court to draw inferences in favor of Defendants, rather than Dr. Crayne. She further argues she presented evidence that (1) she complained she was treated differently than her male coworkers; (2) in response, Dr. Cohen told her to find a "plan b" to her desire to remain employed with Defendants; and (3) weeks later, Defendants decided not to renew Dr. Crayne's contract.

First, Defendants frame their Rule 50(b) motion as one involving Dr. Crayne's *prima facie* case, presumably under the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The cases they cite all involve questions decided at summary judgment rather than trial. (Doc. 69 at 4). As the Eleventh Circuit has held, however, the *McDonnell Douglas*

---

[4] (Doc. 75 at 107).

evidentiary standard "plays no role at trial" and "is inapplicable on post judgment motions." *Ismael v. Roundtree*, 161 F. 4th 752, 760 (11th Cir. 2025).

Second, the Defendants' arguments, though couched as Dr. Crayne's supposed failure to meet a legal standard, are truly complaints about the jury's interpretation of the evidence and its apparent decision to credit Dr. Crayne's testimony over that of Drs. Cron and Cohen. Thus, they essentially ask this court to interpret conflicting evidence and its related inferences in their favor, rather than Dr. Crayne's. The court cannot do so. Whether Dr. Crayne's protected activity was a factor in Defendants' decision to terminate her is a question of fact already decided by a jury. Despite Defendants' disagreement with the jury's interpretation of the evidence, there was evidence showing (1) Dr. Crayne engaged in conduct, over a long period of time, to which Defendants claimed to object only toward the end of her employment; (2) other male physicians engaged in similar conduct without consequence; (3) Dr. Crayne complained to Dr. Cohen about a double standard during a meeting concerning her continued employment with Defendants; (4) Dr. Cohen's response to her complaint was to suggest Dr. Crayne find a "plan b"; and (5) Defendants decided not to renew Dr. Crayne's contract only after she complained about a double standard. This is sufficient to support the jury's verdict, and the court cannot say the evidence pointed so overwhelmingly in Defendants' favor that

reasonable people could not have decided in favor of Dr. Crayne. *See, e.g., Brown*, 597 F.3d at 1173.

Next, Defendants' motion is based in an outdated interpretation of the *McDonnell Douglas* framework. As the Eleventh Circuit has explained,

> [I]t is not required, under . . . Title VII, to show that the unlawful purpose was the *only* contributing factor. "[T]he traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656, 140 S. Ct. 1731, 1739, 207 L.Ed.2d 218 (2020).
>
> A plaintiff can even succeed where there are multiple but-for causes: "so long as the plaintiff's [protected characteristic] was *one but-for cause* of [the adverse] decision, that is enough to trigger the law." *Id.* at 656, 140 S. Ct. at 1739 (emphasis added). In this situation, the employer's reason might be both factually grounded and directly causal—in other words, unassailable as pretext. If we require the plaintiff to negate their counterparty's rationale, we permit the absurd result of a plaintiff losing on summary judgment for failing to demonstrate a falsity that she would not need to show at trial.
>
> Moreover, focusing on the defendant's justification can lead both litigants and the court down a rabbit hole that obfuscates the plaintiff's affirmative claim. This is precisely what we sought to avoid when we adopted the convincing mosaic standard. *See Smith* [*v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)]. In *Tynes* [*v. Florida Department of Juvenile Justice*], we emphasized that, at summary judgment, "we ask only one question: whether there is sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff." 88 F.4th [939, 947 (11th Cir. 2023)]. In retaliation claims, we ask whether the defendant intentionally retaliated against the plaintiff because of the plaintiff's protected activity. *Berry* [*v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307, 1310 (11th Cir. 2023)]. These questions appropriately frame the inquiry on the plaintiff's asserted theory of the case. By contrast, the pretext inquiry lets the defendant's explanation take center stage,

> requiring the plaintiff to present contradictory evidence rather than direct or circumstantial evidence supporting an inference of discrimination.
>
> Surely, the plaintiff might find it useful to attack the defendant's account. Evidence that their explanation is untruthful, inconsistent, or that the alleged conduct was not typically punished may all be probative of malfeasance. But, as we have explained before, the "entire evidentiary picture" goes further than pretext. *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1242 (11th Cir. 2023). Our precedent specifically describes evidence of pretext as *a subset* of potentially relevant circumstantial evidence. *Id.* And, while this Circuit has no published opinion finding the requisite summary judgment inference after a plaintiff failed on pretext, we have recognized the possibility, and we conduct both analyses accordingly. *See id.*; *Berry*, 84 F.4th at 1310.

*Ismael*, 161 F.4th at 761–62. The *Ismael* court cited an unpublished opinion, *Brown v. Wrigley Manufacturing Co., LLC*, No. 21-11328, 2023 WL 2386500, at *6 (11th Cir. Mar. 7, 2023), in which the Eleventh Circuit concluded "that the plaintiff did not show pretext under *McDonnell Douglas* but that he did present a convincing mosaic of discriminatory intent because that standard allowed him to add his 'more general evidence of discriminatory intent to the equation.'" *Id.*, n.4.

UAB's focus on the evidence they presented at trial ignores the sum of the circumstantial evidence Dr. Crayne presented. The Eleventh Circuit has made clear that, once a case advances to trial, the question of retaliation is one of the whole picture rather than the various components of the *McDonnell Douglas* framework. While Defendants presented evidence from which a jury could have found in their favor, that evidence was not conclusive, and the facts and inferences at trial did not

point so overwhelmingly in their favor that reasonable people could not arrive at a contrary verdict. *See Brown*, 597 F.3d at 1173. Dr. Crayne presented sufficient circumstantial evidence of retaliation, and a reasonable jury could have credited either her testimony or that of Drs. Cron and Cohen. This jury believed Dr. Crayne. It was entitled to do so, and the court will not disturb its verdict. Accordingly, Defendants' motion for judgment as a matter of law on the retaliation claim will be denied.

**2. Evidence of Discriminatory Intent**

Defendants also ask the court to enter judgment as a matter of law that Dr. Crayne's sex was not a motivating factor in their decision not to renew her contract. They cite the same arguments made in support of their contention that the court should enter judgment as a matter of law in their favor on Dr. Crayne's retaliation claim. They also complain that (1) Dr. Crayne was a female and mother throughout her employment so the jury could not have found that Drs. Cron and Cohen suddenly held that against her in 2019; (2) Dr. Cron's comment that he preferred female doctors without children cannot be imputed to Dr. Cohen because Dr. Cohen was unaware of any such remarks; and (3) Dr. Cron's comments were not close enough in time to the non-renewal decision and do not overcome Drs. Cron and Cohen's testimony that they acted in good faith based on third-party reports of Dr. Crayne's alleged unprofessional behavior.

In response, Dr. Crayne points to the evidence she presented that showed (1) gender discrimination in selecting fellows, (2) Dr. Cron preferred to hire men or single, childless women, (3) Dr. Cron criticized Dr. Crayne for spending time with her children, (4) Defendants tolerated intoxicated behavior from men but not women, (5) Defendants required Dr. Crayne to attend counseling because of her divorce, (6) she was never disciplined for any conduct, and (7) her evaluations reflected good to outstanding performance.

Defendants' arguments fail for the same reasons as their arguments attacking the retaliation verdict. At their core, they are complaints that the jury credited the circumstantial evidence presented by Dr. Crayne instead of the testimony of Drs. Cron and Cohen. Dr. Crayne presented sufficient circumstantial evidence that her sex was a motivating factor in her termination. While a reasonable jury could have credited either Dr. Crayne's testimony or that of Drs. Cron and Cohen, it found in favor of Dr. Crayne on this point. Defendants' motion seeks to have this court view the evidence in their favor rather than in favor of Dr. Crayne, but the court cannot do so. Accordingly, their motion for judgment as a matter of law on the discrimination claim will be denied, and the court will enter judgment in favor of Dr. Crayne on her claim for discrimination.[5]

[5] The September 2025 comments and annotations to Eleventh Circuit Pattern Jury Instruction 4.5 state as follows:

### 3. Back Pay and Mental Anguish.

#### a. Back Pay

Defendants complain Dr. Crayne did not sufficiently prove she was entitled to back wages because (1) she earned a higher salary at Purohit Pediatric Clinic than she would have earned at UAB; (2) she suffered no actual economic loss relating to her loss of UAB benefits; (3) she presented no evidence of the amount of UAB retirement contributions she lost; (4) she did not mitigate her damages after voluntarily separating from Purohit; (5) she did not present evidence regarding what she chose to pay herself once she opened her own business; and (6) she did not present adequate evidence of any lost wages for the first quarter of 2025. Dr. Crayne responds that she presented sufficient evidence showing that her total compensation package if she remained employed with Defendants would have exceeded that with Purohit and the evidence regarding the value of her UAB benefits came from Defendants' witnesses, which Defendants failed to dispute through cross-

---

> C. The "Same-Decision" Defense. If the Defendant prevails on a "same-decision" defense, the jury should award no compensatory or punitive damages, even though Plaintiff has proven that "race, color, religion, sex or national origin was a motivating factor." See 42 U.S.C. § 2000e-5(g)(2) (B) (providing that in cases where the employer prevails on the "same-decision" defense, the court may grant declaratory relief, limited injunctive relief and limited attorney's fees and costs; this is an issue for the court, not the jury). Accordingly, Pattern Instruction 4.5 instructs the jury that it need not consider the issue of damages if it finds in favor of the defendant on this defense. However, the same-decision defense is not available in causes of action that require but-for causation. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 174 (2009).

Thus, Dr. Crayne prevailed on her discrimination claim but is entitled to no compensatory damages.

examination. She further argues that Defendants' motion presents arguments not previously made and the court previously rejected Defendants' arguments regarding failure to mitigate.

The court agrees Defendants failed to raise some of these issues in their Rule 50(a) motion. Their motion argued only that Dr. Crayne had no lost wages because her salary at Purohit was higher than while at UAB and that she failed to mitigate her damages because she left a higher paying job without a compelling reason. (Doc. 75 at 112-21). Further, Defendants couch their arguments in terms of Dr. Crayne's failure to prove she mitigated her damages. But failure to mitigate is an affirmative defense on which Defendants, not Dr. Crayne, bore the burden at trial. *See Brown*, 597 F.3d at 1183.[6] Thus, any complaint about the lack of evidence regarding Dr. Crayne's pay after she separated from Purohit is a result of Defendants' failure to elicit needed testimony.

Title VII provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C.A. § 2000e–5. A plaintiff must attempt to mitigate her damages by seeking employment that is "substantially

---

[6] In *Brown*, the Eleventh Circuit acknowledged that absent special circumstances, an employee's rejection of an employer's unconditional job offer usually ends the accrual of backpay. 597 F.3d at 1183. A plaintiff, however, can present evidence that her rejection of a job offer or promotion was reasonable, and a jury is entitled to credit the plaintiff's reasoning over that of the defendant's. *Id.*

equivalent" to the position she lost. *E.E.O.C. v. Joe's Stone Crab, Inc.,* 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998). "Substantially equivalent employment" is "employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status to those available to employees holding the position from which the Title VII claimant has been discriminatorily terminated." *Id.* (internal citations and quotations omitted).

The court finds misleading Defendants' arguments regarding Dr. Crayne's decision to open a FocusMD clinic. They urge the court to "find that [Dr. Crayne] left subsequent work without compelling or justifying reason and reduce her back pay award for this period to zero," "[b]ecause [she] voluntarily left her job with Purohit without making any other effort to find another high paying job." (Doc. 69 at 21-22). This argument fails to consider whether Dr. Crayne's employment as a general pediatrician with Purohit or FocusMD is "substantially equivalent" to her employment with Defendants as a pediatric rheumatologist.

Several witnesses testified that they remained in academics, rather than pursuing more lucrative jobs, because of a passion for research and academics. Dr. Crayne specifically testified that her termination "ended [her] career in academics and clinical research, and it completely shifted [her] into an entirely other career field," treating children for colds, sports physicals, ear infections, and ADHD instead of practicing pediatric rheumatology. (Doc. 74 at 254). She also testified about

attempts to pursue other job opportunities in pediatric rheumatology. (Doc. 75 at 81-82). Thus, viewed in the light most favorable to Dr. Crayne, the jury could have concluded she reasonably sought, but was unable to obtain, employment that was "substantially equivalent" to her position as a pediatric rheumatologist. Finally, Defendants argued to the jury that Dr. Crayne's decision to leave Purohit was not reasonable, but the jury appears to have rejected that argument when it awarded back pay. (Doc. 76 at 59-60).

Regarding the difference in Dr. Crayne's earnings at Purohit and UAB, Defendants contend her lost wages depend solely on the value of the insurance and other benefits she lost when her UAB employment ended but there was "no evidence of any event between the end of her UAB employment and [] trial that would have resulted in benefits being paid from those policies." (Doc. 69 at 14). As Defendants would have it, because Dr. Crayne "did not die, suffer accidental dismemberment, or become disabled," she should be prohibited from recovering the value of these policies. However, the court is mindful that "[t]wo overarching principles guide the computation of a back pay award: '(1) unrealistic exactitude is not required, [and] (2) uncertainties in determining what an employee would have earned but for the discrimination should be resolved against the discriminating employer.'" *Joe's Stone Crab, Inc.,* 15 F. Supp. 2d at 1376. Further, this argument grossly mischaracterizes the damages Dr. Crayne sought. The amounts awarded to Dr.

Crayne did not compensate her for the full value of the policies upon payment of benefits; instead, the amounts she sought and was awarded represent the value of the premiums for those benefits and the existence of coverage irrespective of any loss that would trigger those policies to pay benefits. Defendants' representative, Jason Turner, testified Dr. Crayne would have been entitled to numerous benefits had she remained employed with Defendants, including health and dental insurance, life insurance, accidental death and dismemberment insurance, long term disability, and paid time off. (Doc. 73 at 108-112). He further estimated the value of those benefits at approximately 30% of Dr. Crayne's salary,[7] and Defendants did not challenge that valuation in cross examination. (*Id.* at 112). Additionally, Dr. Crayne testified that at Purohit, she received only health, dental, and malpractice insurance, but Defendants elicited no testimony regarding the value of these benefits or how they compared to the insurance coverage Dr. Crayne held while employed at UAB. (Doc. 74 at 248). While the testimony concerning the value of Dr. Crayne's lost benefits was not precise, the court is satisfied their value was sufficiently established.

Finally, Defendants complain that Dr. Crayne's calculation of her back pay is inaccurate because the chart she presented to the jury showed she earned only $50.72 during the first quarter of 2025. According to Defendants,

---

[7] Mr. Turner testified that while he was "not sure" Dr. Crayne was eligible for retirement benefits as a postdoctoral scholar, had she remained employed by UAB, she would have been entitled to a 13.5% retirement contribution. (Doc. 73 at 110-11).

> This number is unsupported by the evidence and appears to be a typo in which Plaintiff left off the remaining three zeroes from her 2025 first quarter earnings. There was no testimony at trial that Plaintiff suddenly stopped working in 2025 or that she only made fifty dollars for three months of work. With this typo corrected, Plaintiff would not be entitled to any lost wages for the first quarter of 2025. But as it is, Plaintiff sought—and the jury awarded—lost wages for the quarter as $42,415.53.

(Doc. 69 at 22-23). Dr. Crayne does not address this question in her response.

The court agrees this figure in Dr. Crayne's back pay table is curious. Nevertheless, at trial, Dr. Crayne testified her estimated income to date (as of October 21, 2025) was $101,440.32. (Doc. 74 at 245). Dr. Crayne's back pay chart showed income through September 30, 2025, of $101,490.72, and her pretrial damages list showed 2025 YTD income of $101,448.32. (Docs. 47, 65-1). Thus, this figure is substantially supported by the testimony at trial.

As noted above, while it was initially Dr. Crayne's burden to demonstrate her damages from Defendants' conduct, the burden of producing further evidence to establish the amount of interim earnings or lack of diligence fell to Defendants. *See Nord. v. U.S. Steel Corp.*, 758 F.2d 1462, 1470-71 (11th Cir. 1985). The court has reviewed the trial transcript and did not locate any questioning of Dr. Crayne by Defendants regarding the calculation of her interim earnings. It therefore declines to supplant the jury's decision, and Defendants' motion for judgment as a matter of law as to the award of back pay will be denied. *See Tracy*, 980 F.3d at 811.

**b. Mental Anguish**

Defendants also attack the jury's award of mental anguish damages because they asssert Dr. Crayne (1) did not present evidence she sought treatment for any mental health symptoms or was diagnosed with a mental health condition, (2) obtained a higher paying job, and (3) had other stressors which could have caused any mental anguish. First, Defendants did not raise these arguments in their Rule 50(a) motion, so the court may not consider them now. (Doc. 75 at 111-13). Second, these arguments flatly ignore Dr. Crayne's testimony concerning the impact of Defendants' decision on her career, namely, her inability to procure a comparable position as a pediatric rheumatologist or to pursue a research career after spending multiple years in specialized training. (Doc. 74 at 248-50, 254-55). Dr. Crayne also testified that she met with a UAB counselor until she left her employment with Defendants. (*Id.* at 250).

Next, the court agrees with Dr. Crayne that Defendants' arguments regarding mental health treatment and/or diagnosis seek to impose on Dr. Crayne a higher burden than required. The court notes that Defendants cite no law in support of these arguments. A plaintiff's testimony, standing alone, sufficiently supports an award for emotional distress from discrimination if it is sufficiently articulated, meaning that she describes the "harm, mental, emotional, or otherwise, arising from the discrimination" rather than simply offering a conclusory statement that she suffered

emotional distress. *See Faulk v. Dimerco Express USA Corp.*, 172 F.4th 844, 861 (11th Cir. 2026).

Finally, Defendants' arguments that Dr. Crayne could not, as a matter of law, have suffered mental anguish attributable to her termination because she obtained a higher paying job and had other life stressors are simply unpersuasive. The cause of Dr. Crayne's mental anguish is a question of fact, and the jury rejected these arguments when Defendants made them at trial. Consequently, the court declines to disturb the jury's verdict on mental anguish damages, and Defendants' motion for judgment as a matter of law on this point will be denied.

## III. Defendants' Rule 59 Motion

Defendants' omnibus motion states it is brought pursuant to both Rule 59 and Rule 60(a), but it includes no discussion of Rule 60(a). The court declines to address arguments not developed by the parties and, therefore, considers the motion brought only pursuant to Rule 59. Defendants argue they are entitled to a new trial because the jury's retaliation verdict was against the "clear weight of the evidence." (Doc. 69 at 25). Dr. Crayne responds that a motion brought under Rule 59 should not rehash arguments previously rejected under Rule 50.

### A. Standard of Review

Pursuant to Rule 59(a), a district court may grant a motion for "a new trial on all or some of the issues . . . for any reason for which a new trial has . . . been granted

in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312-13 (11th Cir. 2013) (internal citations and quotations omitted). The court may also grant a new trial under Rule 59 if the "damages are excessive, or . . . the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). On appeal, a district court's denial of a motion for new trial is reviewed for abuse of discretion. *Lamonica*, 711 F.3d at 1312.

**B. Discussion**

Defendants advance the same arguments in support of their Rule 59 motion as their Rule 50(b) motion, and the court rejects them for the same reasons already stated. Defendants also appear to argue that the jury's award on retaliation is inconsistent with their finding regarding sex discrimination:

> The jury's retaliation verdict being against the clear weight of the evidence is further highlighted by the fact that the jury found Plaintiff's sex was not a but-for cause of her non-renewal, but her complaint to Dr. Cohen was a but-for cause. Specifically, the jury found that Plaintiff's sex/status as a mother was a motivating factor for UAB's decision not to renew her contract, but UAB would have made the same non-renewal decision even if her sex/status as a mother was not taken into account. (See Doc. 61). In other words, the jury found that

> Plaintiff's sex did not change the outcome of the non-renewal decision, so her sex was not a but-for cause of the decision. *See, e.g., Lapham v. Walgreen Co*., 88 F.4th 897, 894 (11th Cir. 2023). Instead, the decision was based on a legitimate, lawful reason.
>
> Plaintiff challenged the same adverse action—the non-renewal of her contract—in both claims. Thus, the jury's finding in the retaliation verdict (that Plaintiff's alleged protected activity was a but-for cause of the non-renewal) is against the clear weight of the evidence as determined by the jury in their discrimination verdict; if the non-renewal was motivated by a legitimate reason, that finding should logically hold true for both claims.

(Doc. 69 at 25-26). This argument infers too much into the jury's verdict. As Dr. Crayne argues, the jury's verdict on discrimination—that her sex was not a but-for cause of her termination—does not require a conclusion that Defendants terminated her for a legitimate reason or that they succeeded on their same-decision defense for both the discrimination and retaliation claims. Instead, the jury's verdict, read as a whole, indicates they concluded Defendants terminated Dr. Crayne because of her protected activity rather than her sex. (Doc. 60 at 4). To the extent Defendants are attempting to suggest the jury's verdict is inconsistent, the court further agrees with Dr. Crayne's assertion, they were required to do so before the jury was excused. *See Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1259 (11th Cir. 2015). As explained above, the jury's verdict was not against the clear weight of the evidence, and Defendants' Rule 59 motion will be denied. *See McGinnis*, 817 F.3d at 1254.

## IV. Defendants' Motion to Amend or Remit

Finally, Defendants ask the court to amend the judgment or remit the back pay award because they believe the jury's award exceeded the amount established by the evidence. This motion is mostly based on the same arguments complaining of the jury's award of back pay for Defendants' retaliation against Dr. Crayne.

Remittitur is appropriate only when a damages award exceeds the outer limit of the amount established by the evidence. *See Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057-58 (S.D. Fla. 1995) (citations omitted). The jury's verdict on Dr. Crayne's retaliation claim does not meet that standard. Dr. Crayne presented evidence establishing the total value of her UAB benefits would have been approximately 30% of her salary. Defendants again argue the court should remit the value of these benefits (which they calculate at $3,463.71 per quarter) because Dr. Crayne suffered no losses under these policies. However, as explained above, this argument misconstrues the nature of Dr. Crayne's claimed losses. She is entitled to claim the value of the lost benefits, even if she suffered no losses under the policies, because they were a component of her compensation.

Further, UAB asks the court to reduce the back pay award by $4,500 per year because Dr. Crayne would have been eligible to receive this in retirement benefits from Purohit after one year. While this figure appears to be 3% of Dr. Crayne's $150,000 salary at Purohit, the court can find no evidence in the record establishing

this amount. Defendants' brief highlights the speculative nature of this argument: "Plaintiff was almost certainly eligible to receive this contribution twice, but even assuming she only received it once, the $4,500 amount ($450 per quarter)[8] should also be included within Plaintiff's interim earnings from Purohit." (Doc. 69 at 29). Additionally, this argument relates to whether Dr. Crayne mitigated her damages, and as discussed above, Defendants bore the burden on this issue. Their failure to provide evidence of the value of Dr. Crayne's retirement benefits at Purohit does not justify remittitur.

The court has previously rejected Defendants' arguments regarding Dr. Crayne's alleged failure to mitigate her damages both when they raised them in their Rule 50(a) motion following the close of Dr. Crayne's case and in the context of their posttrial motions above. Arguments about the relative value of Dr. Crayne's employment benefits and back pay, as well as mitigation, are fact questions that either were made or should have been made to the jury. The court will not disturb the jury's verdict on these grounds.

Further, the cases cited by Defendants are distinguishable from this one. In *Holmes v. West Palm Beach Housing Authority*, the district court's order granting remittitur stated that the parties agreed in open court that any back pay award would

---

[8] The court does not understand this calculation.

be limited. 309 F.3d 752, 754 (11th Cir. 2002). While the plaintiff disputed this agreement on appeal, he also failed to cite any evidence to support a higher back pay award. In *Dawson v. Florida Department of Transportation*, the court awarded remittitur based on the jury's failure to deduct earnings from the plaintiff's new job when awarding lost wages. No. 4:16CV775-RH/CAS, 2018 WL 1885489, at *2 (N.D. Fla. Apr. 19, 2018). Importantly, the *Dawson* plaintiff agreed remittitur was proper. Further, the *Dawson* court rejected the defendants' argument that the plaintiff failed "to mitigate damages by continuing in the new jobs longer than he did. But the jury was properly instructed on mitigation and was entitled to find that Mr. Dawson worked for as long as he could." *Id.* at *3. The court therefore declined to further reduce the back pay award. Finally, *Farley v. Nationwide Mutual Insurance Co.* involved the remittitur of a jury verdict to the maximum allowed under the relevant statute. *See Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1330 (11th Cir. 1999) (noting the trial court remitted the $450,000 jury award to $300,000, the maximum allowed under 42 U.S.C. § 1981a(b)(3)(D)).

Here, the jury's verdict was reasonable and within the permissible range of damages. Defendants' motion for remittitur will therefore be denied.

**V. Dr. Crayne's Motion for Prejudgment Interest**

Dr. Crayne asks the court to award her prejudgment interest in the amount of $36,359.78. (Doc. 67). Defendants object to the award of prejudgment interest

because (1) Dr. Crayne asked the jury to award prejudgment interest as an element of back pay but the jury did not do so; (2) Dr. Crayne's calculations of back pay and prejudgment interest are inaccurate; and (3) Dr. Crayne failed to mitigate her damages. (Doc. 68). The court has already addressed and rejected Defendants second and third arguments.

"Title VII authorizes prejudgment interest as part of the backpay remedy . . . to make persons whole for injuries suffered through past discrimination. Prejudgment interest, of course, is an element of complete compensation." *Loeffler v. Frank,* 486 U.S. 549, 558–59, (1988) (internal quotation marks and citations omitted). Prejudgment interest adjusts the back pay award for inflation to reflect the present day value of income that should have been paid to the plaintiff. *Joe's Stone Crab*, 15 F. Supp. 2d at 1379. Like reinstatement or front pay, prejudgment interest is an equitable remedy that lies in the discretion of the court. *See Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1439 (11th Cir. 1991).

To determine the appropriate interest rate, courts traditionally turn to the National Labor Relations Act ("NLRA") for guidance and under which "there has been a consistent practice of awarding prejudgment interest on back pay awards." *Joe's Stone Crab*, 15 F. Supp. 2d at 1379 (citing *Brown v. A.J. Gerrard Mfg. Co.,* 715 F.2d 1549 (11th Cir.1983)). Courts in the Eleventh Circuit should use IRS prime rates to calculate the amount of prejudgment interest on back pay awards in Title VII

cases. *See E.E.O.C. v. Guardian Pools, Inc.,* 828 F.2d 1507, 1512 (11th Cir. 1987) "Prejudgment interest accrues from the relevant period of discrimination at issue through the date of judgment." *Krempasky v. Hendricks Restaurant Holdings LLC*, 1:18-CV-4279-MLB-LTW, 2019 WL 11790570, * 5 (N.D. Ga. June 7, 2019) (citing *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1300 (M.D. Fla. 2000)).

Defendants argue that during closing arguments, Dr. Crayne's counsel displayed a spreadsheet to the jury they "believe to be identical to Document 65-1," which shows a calculation of back pay and interest for a total loss of $390,693.80. They contend

> Plaintiff's counsel specifically requested that the jury factor prejudgment interest into its back pay award, requesting total back pay of $390,693.80 (the amount listed on Doc. 65-1 for alleged lost wages plus interest). Plaintiff's counsel then advised the jury that should it be unwilling to award interest, it could instead award back pay without interest for $192,383.03. The jury appears to have taken this suggestion, as it awarded $192,000 for lost wages on Plaintiff's retaliation claim. (Doc. 61 at 5).

(Doc. 68 at 2-3). The transcript of closing arguments, however, reads slightly differently:

> So we took that pay, and then we took the benefits. I hate math, and it stinks, and so luckily Jason Turner, when we were talking about benefits, which is part of his job, tells us that the pay that we looked at for Dr. Crayne was 107 or 8,000, but then she could have gone up to 130 or 50 as an assistant professor. And then we went through all of the different benefits that were available to her.
>
> And then when we got to the end of Mr. Turner's testimony, I asked -- I said, You would agree that this represents approximately 30 percent

> of someone's salary? And he agreed. So we took 30 percent of $130,050 to come up with the back pay number that we then divided by 52 weeks to come up with a weekly rate.
>
> And then in doing that, we created a spreadsheet using that rate by 13 weeks to calculate Dr. Crayne's lost wages. In doing this, we subtracted what she earned at her other jobs that you heard her testify to when she was on the stand. I am showing those to you. So we subtracted this amount, and she's recently come to a point where she's making more than she was making at that time. So the only thing we included in our calculation was the interest. If you don't want to award Dr. Crayne interest, then the number that we have totaled for her lost wages without interest is $192,383.03.

(Doc. 76 at 45-46).

On one hand, Dr. Crayne's counsel did mention prejudgment interest to the jury and showed a table with a figure that included prejudgment interest. (*See* Doc. 66). On the other hand, the only firm figure Dr. Crayne's counsel mentioned was $192,383.03, the court did not charge the jury on how to calculate prejudgment interest, and the verdict form did not reference prejudgment interest. Without instructions on how to calculate prejudgment interest, the jury would have had no confidence in the calculation or any reason to award it. Thus, the court finds this is not a reason to deny Dr. Crayne's request for prejudgment interest.

Defendants do not challenge the actual calculation of interest, only the alleged inaccuracies in the amount of back pay she claims to have lost. The court finds the equities favor awarding Dr. Crayne prejudgment interest, which is consistent with Title VII's purpose to make victorious plaintiffs whole. *See Loeffler*, 486 U.S. at

557-58. Modifying the jury's award of back pay to include prejudgment interest simply "adjusts the back pay award for inflation and reflects the present day value of income that [Dr. Crayne] should have been paid." *See Joe's Stone Crab, Inc.*, 15 F. Supp. 2d at 1379. Further, because the court withdrew the judgment pending resolution of the parties' posttrial motions, it would be inequitable to deny Dr. Crayne the benefit of interest accruing while the court considered the motions. It will therefore award interest through the date of judgment, which will be entered contemporaneously with this memorandum opinion. The court has revised Dr. Crayne's interest calculation chart as follows:[9]

| Start Date | End Date | Lost Wages | Interim Earnings | Net Lost Wages | Accumulated Principle | Rate | Rate for quarter | Interest Amount | Quarter Total |
|---|---|---|---|---|---|---|---|---|---|
| 2020-07-01 | 9/30/2020 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 4,766.25 | 3% | 0.75% | $ 35.75 | $ 4,802.00 |
| 2020-10-01 | 2020-12-31 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 9,568.25 | 3% | 0.75% | $ 71.76 | $ 9,640.01 |
| 2021-01-01 | 2021-03-31 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 14,406.26 | 3% | 0.75% | $ 108.05 | $ 14,514.31 |
| 4/1/2021 | 6/30/2021 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 19,280.56 | 3% | 0.75% | $ 144.60 | $ 19,425.16 |
| 7/1/2021 | 9/30/2021 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 24,191.41 | 3% | 0.75% | $ 181.44 | $ 24,372.85 |
| 10/1/2021 | 12/1/2021 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 29,139.10 | 3% | 0.75% | $ 218.54 | $ 29,357.64 |
| 1/1/2022 | 3/31/2022 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 34,123.89 | 3% | 0.75% | $ 255.93 | $ 34,379.82 |
| 4/1/2022 | 6/30/2022 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 39,146.07 | 4% | 1.00% | $ 391.46 | $ 39,537.53 |
| 7/1/2022 | 9/30/2022 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 44,303.78 | 5% | 1.25% | $ 553.80 | $ 44,857.58 |
| 10/1/2022 | 12/31/2022 | $ 42,266.25 | $ 37,500.00 | $ 4,766.25 | $ 49,623.83 | 6% | 1.50% | $ 744.36 | $ 50,368.18 |
| 1/1/2023 | 3/31/2023 | $ 42,266.25 | $ 26,501.75 | $ 15,764.50 | $ 66,132.68 | 7% | 1.75% | $ 1,157.32 | $ 67,290.01 |
| 4/1/2023 | 6/30/2023 | $ 42,266.25 | $ 26,501.75 | $ 15,764.50 | $ 83,054.51 | 7% | 1.75% | $ 1,453.45 | $ 84,507.96 |
| 7/1/2023 | 9/30/2023 | $ 42,266.25 | $ 26,501.75 | $ 15,764.50 | $ 100,272.46 | 7% | 1.75% | $ 1,754.77 | $ 102,027.23 |
| 10/1/2023 | 12/31/2023 | $ 42,266.25 | $ 26,501.75 | $ 15,764.50 | $ 117,791.73 | 8% | 2.00% | $ 2,355.83 | $ 120,147.56 |
| 1/1/2024 | 3/31/2024 | $ 42,266.25 | $ 32,404.50 | $ 9,861.75 | $ 130,009.31 | 8% | 2.00% | $ 2,600.19 | $ 132,609.50 |
| 4/1/2024 | 6/30/2024 | $ 42,266.25 | $ 32,404.50 | $ 9,861.75 | $ 142,471.25 | 8% | 2.00% | $ 2,849.42 | $ 145,320.67 |
| 7/1/2024 | 9/30/2024 | $ 42,266.25 | $ 32,404.50 | $ 9,861.75 | $ 155,182.42 | 8% | 2.00% | $ 3,103.65 | $ 158,286.07 |
| 10/1/2024 | 12/31/2024 | $ 42,266.25 | $ 32,404.50 | $ 9,861.75 | $ 168,147.82 | 8% | 2.00% | $ 3,362.96 | $ 171,510.78 |
| 1/1/2025 | 3/31/2025 | $ 42,266.25 | $ 50.72 | $ 42,215.53 | $ 213,726.31 | 7% | 1.75% | $ 3,740.21 | $ 217,466.52 |
| 4/1/2025 | 6/30/2025 | $ 42,266.25 | $ 50,720.00 | $ 0.00 | $ 217,466.52 | 7% | 1.75% | $ 3,805.66 | $ 221,272.18 |
| 7/1/2025 | 9/30/2025 | $ 42,266.25 | $ 50,720.00 | $ 0.00 | $ 221,272.18 | 7% | 1.75% | $ 3,872.26 | $ 225,144.45 |
| 10/1/2025 | 12/31/2025 | $ 42,266.25 | $ 50,720.00 | $ 0.00 | $ 225,144.45 | 7% | 1.75% | $ 3,940.03 | $ 229,084.47 |
| 1/1/2026 | 3/31/2026 | | | $ 0.00 | $ 229,084.47 | 7% | 1.75% | $ 4,008.98 | $ 233,093.45 |
| 4/1/2026 | 6/30/2026 | | | $ 0.00 | $ 233,093.45 | 6% | 1.50% | $ 3,496.40 | $ 236,589.85 |
| 7/1/2026 | 9/30/2026 | | | $ 0.00 | $ 236,589.85 | 7% | 1.75% | $ 4,140.32 | $ 240,730.18 |
| | | | | | | | | $ 48,347.15 | |

[9] The court has used the rates for "non-corporate overpayment (for example, individual)" found at https://www.irs.gov/payments/quarterly-interest-rates (last accessed September 30, 2026).

Accordingly, Dr. Crayne's motion for prejudgment interest will be granted and the court will award her $48,347.15 in prejudgment interest.

## VI. Conclusion

For the reasons set forth above, Defendants' motion for judgment as a matter of law, motion for new trial, motion to amend the judgment, and motion for remittitur are **DENIED**. (Doc. 69). Dr. Crayne's motion to award prejudgment interest is **GRANTED**. (Doc. 67). A separate judgment will be entered.

**DONE** this 30th day of September, 2026.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE